UNITED STATES of America, Appellee,

v.

Peter John CAPRIOLA and Ronald Freeze, Appellants.

Nos. 75–1099, 75–1158.

United States Court of Appeals, Ninth Circuit.

Jan. 22, 1976.

As Amended Feb. 6, 1976.

Rehearing and Rehearing En Banc Denied July 16, 1976.

Gregory J. Miller (argued), San Jose, Cal., appellant in 75–1158 and Marvin F. Cooper, Santa Ana, Cal., for appellant in 75–1099.

Anthony P. Capozzi, Asst. U. S. Atty. (argued), Fresno, Cal., for appellee.

## OPINION

Before DUNIWAY and ELY, Circuit Judges, and SOLOMON, District Judge.*

PER CURIAM:

Appellants Capriola and Freeze were convicted under 21 U.S.C. §§ 952 & 963, for conspiracy to smuggle marijuana from Mexico into this country. Capriola was also convicted on a second count for attempting to import marijuana from Mexico.

■ Here, the appellants present only three contentions worthy of comment. They first argue that delay by the Government in seeking and obtaining indictments against them infringed due process rights guaranteed to them by the Fifth Amendment. The record does not disclose that the delay resulted in any such prejudice to the appellants as to require reversal. *See United States v. Marion,* 404 U.S. 307, 326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

■ The second argument made by appellants is that evidence of a wholly separate conspiracy was admitted against them to their prejudice. Based upon our conclusion that there was, essentially, only one continuing conspiracy, the admission of the challenged testimony did not constitute reversible error.

■ Finally, appellants argue that more severe sentences were imposed upon them because they exercised their right to stand trial. If this is true, the constitutional rights of the appellants have been infringed. *See United States v. Stockwell,* 472 F.2d 1186 (9th Cir.), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973). In support of the contention, the appellants emphasize the disparity in the sentences imposed upon them, as compared to those received by their co-conspirators, who pleaded guilty. From the record before us, we cannot fairly evaluate the contention.

The record does reveal that a number of individuals were originally supposed to have been involved in the criminal activity. The charges against two of them, Buegal and Wachter, were dismissed. Another, Bletcher, received a dismissal of one charge at the Government's request, and, upon a plea of *nolo contendere* to another charge, was sentenced to five months of suspended probation. A fourth, Kaplan, was permitted to plead guilty to the possession of marijuana and was awarded straight probation. He was a witness for the prosecution. A fifth, Caruso, pleaded guilty to one count and was ordered confined for a period of two years, the sentence to be served concurrently with a sentence of confinement which he was then serving. A sixth, Mazzie, pleaded guilty to one count, received a sentence of three years probation, with other counts dismissed. Mazzie was named in more counts than any other of the accused, and he, like Kaplan, testified for the prosecution. Finally, one Duley, who may have been the principal organizer of the whole illicit enterprise, pleaded guilty and was sentenced to a two-year period of confinement, this sentence, as in the case of Caruso, to be served concurrently with another sentence already being served by Duley.[1]

In contrast, the appellant Capriola, a lawyer, who pleaded not guilty, was sentenced after trial to a term of six years of imprisonment, to be followed by a three-year period of parole. And the appellant, Freeze, after trial and conviction, was sentenced to a three-year term of confinement, with a mandatory three-year parole period.

There may be good and sufficient reasons for such substantial disparity in the treatment of those who did not stand trial and the appellants, who did. But, if there are such reasons, the record here is not adequately explicit to make those reasons readily discernible. *See United States v. Wiley,* 278 F.2d 500 (7th Cir. 1960).

---

* Honorable Gus J. Solomon, Senior United States District Judge, Portland, Oregon, sitting by designation.

1. In their briefs, the appellants insinuate that Duley was extraordinarily vicious, writing, "It might be mentioned in this regard that defendant Duley attempted to solicit the commission of murder. That is, the killing of defendant, Freeze. . . . "

When there is substantial disparity in sentences imposed upon different individuals for engaging in the same criminal activity, the preservation of the appearance of judicial integrity and impartiality requires that the sentencing judge record an explanation. A formal statement of reasons is not necessary. The courts may easily make their explanations orally during the sentencing procedures, and these will appear in the record.

We therefore conclude that there must be a remand to enable the District Court to reconsider the sentences of both appellants. If the court remains convinced that the sentences should not be substantially ameliorated, then it should state its reasons for imposing the sentences. If it concludes that it did penalize either of the defendants because he exercised his right to a trial, it should vacate the sentence and resentence that defendant, again stating its reasons for imposing the sentence.

The judgments of conviction are affirmed, but the cause is remanded for further proceedings in line with the requirements herein specified.

Remanded.

SOLOMON, District Judge (concurring and dissenting):

I concur in affirming the convictions of Capriola and Freeze. I cannot agree that the case should be remanded to the trial court. In my view it is not only unnecessary but also improper for us to require the trial court to make a finding on whether it penalized the defendants for exercising their right to a trial.

The time may come when trial judges in every case will be required to set forth their reasons for the sentences they impose. That time has not yet arrived. Unless a sentence is wrong as a matter of law, this circuit has traditionally refused to disturb a sentence on appeal.

Some cases, like *United States v. Stockwell*, 472 F.2d 1186 (9th Cir.), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973), cited in the majority opinion, require the sentencing judge to give his reasons for the particular sentence. But *Stockwell* was an unusual case and the sentence imposed upon the co-defendant who pleaded guilty was not material to the court's holding. In *Stockwell*, the judge threatened to give Stockwell five to seven years if he went to trial but only three years if he pleaded guilty. Stockwell was tried and convicted; he got seven years. This Court held that when such a threat appears on the record, the reasons for the eventual sentence must also appear on the record.

But here, unlike *Stockwell*, there was no attempt to coerce the defendants to plead guilty. It has been the rule that different sentences may be imposed upon different defendants for the same or similar offense.

Capriola and Freeze, who were tried and convicted, both received more severe sentences than did their co-defendants who pleaded guilty. As the majority points out, "a number of individuals were originally supposed to have been involved in the criminal activity" and the charges against some of them were dismissed; others were permitted to plead guilty or nolo contendere to fewer counts or to a lesser offense; some received probation and others sentences concurrent with the ones they were then serving. The majority concludes that there may be good and sufficient reasons for this disparity but that the record does not make those reasons readily discernible.

The evidence showed that Capriola and Freeze were among the leaders of the conspiracy. Capriola, a lawyer and a former deputy district attorney, supplied the legal knowledge, and Freeze was the contact with the airplane sales company which the conspirators took over.

In spite of strong proof of guilt, neither Capriola nor Freeze has ever admitted guilt, and both testified falsely.

One of the risks a defendant takes when he elects to go to trial is that unfavorable information about his background or character may surface during the trial. The risk is even greater when a defendant is convicted in spite of his false testimony.

The majority opinion refers to the dismissal of all charges against some defendants and the dismissal of some charges against other defendants. Were these dismissals prima facie improper? Must a judge pass on the validity of the reasons for the dismissals whenever he sentences another defendant who was convicted after a trial?

The majority opinion also refers to the probationary terms and concurrent sentences given other defendants who pleaded guilty. Does this mean that whenever two defendants receive different sentences, a presumption of impropriety arises which can only be overcome by a statement of the reasons the judge imposed the sentence?

I do not believe that there is any such presumption. In addition, the record here contains ample justification for the differences in the sentences. The sentences of those defendants who pleaded guilty were imposed at least three years before Capriola and Freeze were tried. Other defendants admitted their participation and testified. For example, Mazzie, who was placed on probation, was persuaded to join the conspiracy by his brother-in-law, Capriola. When Mazzie flew to Mexico, he was arrested. He spent two years in a Mexican prison. Mexican prisons are not known for their humane treatment, and Mazzie testified that his incarceration was a brutal experience.

On these facts, it was within the discretion of the trial judge to determine, within the limits provided by law, the sentences he should impose and also to determine whether to set forth the reasons for these sentences.

I would affirm the sentences as well as the convictions.