**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-30140 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-00215-JLR-1 |
| v. | |
| GARY JOSEPH MABE, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Submitted April 9, 2013**
Seattle, Washington

Before: D.W. NELSON, TASHIMA, and CALLAHAN, Circuit Judges.

Pursuant to a written plea agreement with the government, Defendant-

Appellant Gary Mabe pleaded guilty to conspiracy to utter counterfeit obligations

or securities, in violation of 18 U.S.C. §§ 371 and 472, and counterfeiting

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

obligations or securities, in violation of 18 U.S.C. §§ 471–472. Mabe argues that the district court and his own lawyer improperly dissuaded various witnesses from testifying on his behalf during the sentencing hearing, that his lawyer was constitutionally ineffective as a result, and that the government breached the plea agreement. We have jurisdiction over Mabe's appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.

1.      Regardless of whether we review for abuse of discretion or plain error, the district court did not err in stating that certain of Mabe's proposed witnesses might incriminate themselves if they testified. Trial judges have discretion to warn witnesses about the risk of self-incrimination. *United States v. Santiago-Becerril*, 130 F.3d 11, 26 (1st Cir. 1997); *United States v. Harlin*, 539 F.2d 679, 681 (9th Cir. 1976). The district court was legally correct when it observed that Mabe's witnesses might admit the elements of misprision of a felony, and the court did not use threatening or coercive language that "substantially interfere[d] with a defense witness' decision whether to testify." *United States v. Vavages*, 151 F.3d 1185, 1189–90 (9th Cir. 1998).

In any event, any error was harmless. The district court already had most of the witnesses' written declarations, and the evidence that Mabe was a leader of the

conspiracy was overwhelming, thereby supporting the district court's decision to impose an aggravating role enhancement under Sentencing Guidelines § 3B1.1.

**2.** Mabe was not denied effective assistance of conflict-free counsel. As an initial matter, we generally do not review ineffective assistance of counsel claims on direct appeal. *United States v. Benford*, 574 F.3d 1228, 1231 (9th Cir. 2009). The record here does not reveal what happened between Mabe's attorney and the witnesses who did not testify.

However, even if we make every factual inference in Mabe's favor and reach the merits of his claims, they lack merit under both prongs of *Strickland v. Washington*, 466 U.S. 668, 687–91, 694 (1984). Assuming that Mabe's lawyer agreed with the district court that Mabe's witnesses might incriminate themselves, and that the lawyer then advised the witnesses not to testify, the lawyer did not perform deficiently because the district court's analysis of the risk of self-incrimination was legally correct. In addition, there is no reasonable probability that Mabe suffered any prejudice from the lawyer's actions, as the district court had most of the witnesses' written declarations; it is unlikely the court would have found Mabe credible based on the witnesses' additional testimony; and the evidence that Mabe was a leader of the conspiracy was overwhelming.

Mabe more specifically argues that his lawyer violated his right to conflict-free counsel, but he fails to show "that his attorney was actively representing conflicting interests and that the conflict adversely affected the attorney's performance." *Stenson v. Lambert*, 504 F.3d 873, 885 (9th Cir. 2007). That is, Mabe shows, at most, a "mere theoretical division of loyalties," *Mickens v. Taylor*, 535 U.S. 162, 171 (2005), and makes no showing that a conflict, even assuming one existed, "influenced [his lawyer's] basic strategic decisions," *United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002), *as amended*, 320 F.3d 889 (9th Cir. 2003).

**3.** The government did not breach the plea agreement. Because Mabe failed to allege a breach below, we review for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

The government presented testimony that Mabe and his co-conspirators were responsible for about $35,000 in counterfeit currency, which was consistent with the plea agreement's factual statement that "Mabe and his co-conspirators manufactured and/or passed over $20,000 in fake United States currency." The government elicited this testimony to correct Mabe's misrepresentations to the court, not to try to increase his sentence, aligning this case with *United States v. Allen*, 434 F.3d 1166, 1175 (9th Cir. 2006), and distinguishing it from *United*

4

*States v. Whitney*, 673 F.3d 965, 971 (9th Cir. 2012), and *United States v. Boatner*, 966 F.2d 1575 (11th Cir. 1992).

Even if the government had breached the plea agreement, such breach did not affect Mabe's substantial rights, as he got everything the plea agreement promised. *See Puckett*, 556 U.S. at 141–42. There was, accordingly, no plain error.

**AFFIRMED.**